FILED
2012 Jan-13 PM 02:07
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# MIDDLE DIVISION

| | |
|---|---|
| **TERRY MOORE,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) Case No.: 4:11-CV-3698-VEH |
| | ) |
| **THE BAKERY AND** | ) |
| **CONFECTIONERY UNION AND** | ) |
| **INDUSTRY INTERNATIONAL** | ) |
| **PENSION FUND, et al.,** | ) |
| | ) |
| **Defendants.** | ) |

## **MEMORANDUM OPINION**

Before the Court is the Defendants' Opposed Motion To Transfer Pursuant to 28 U.S.C. § 1404(a) (the "Motion To Transfer") and its supporting memorandum (Doc. 13 and Doc. 14); Plaintiff's Response in Opposition to Defendants' Opposed Motion To Transfer Pursuant to 28 U.S.C. § 1401(a) (Doc. 16); Defendants' Reply (Doc. 19); Plaintiff's Sur-reply (Doc. 32); Defendants' Response to Plaintiff's Sur-reply (Doc. 28); and several Notices of Recent Developments filed by the Defendants (Docs. 21, 23, and 25). Additionally, the Court heard oral arguments on the Motion To Transfer on January 12, 2012. The Motion To Transfer being amply briefed and fully argued, it is now under submission and ripe for decision.

For the reasons stated on the Record and set out below, the Court finds that the Motion To Transfer is due to be **GRANTED**.

## I.     BACKGROUND

Defendants Bakery and Confectionary Union and Industry International Pension Fund **(**the "Pension Fund") and Board of Trustees of Bakery and Confectionary Union and Industry International Pension Fund **(**the "Board of Trustees") move the Court to transfer this case to the Southern District of New York ("S.D.N.Y.") pursuant to 28 U.S.C. § 1404(a), for potential consolidation with two previously filed cases that it says present the same claims.

The Motion is opposed by the Plaintiff, a former Sara Lee employee,[1] who argues that he could not have brought his case in the S.D.N.Y. because he has no "minimum contacts" with that venue. He also argues that the convenience factors of section 1404(a) weigh against transfer.

Defendants argue that Plaintiff's venue argument fails because the "minimum contacts" inquiry is directed at the *Defendants'* minimum contacts, not the Plaintiff's. Defendants also argue for application of the first-filed rule to support a transfer to S.D.N.Y., which it believes to be in the interests of justice.

---

[1] Sara Lee is a participating employer under the Defendants' pension plan. Plaintiff worked at the Sara Lee plant in Fort Payne, AL.

## II.   STANDARD

A district judge has "broad discretion" under 28 U.S.C. § 1404(a) to transfer a civil action, *Kenneth F. Hackett & Assocs., Inc. v. GE Capital Info. Tech. Sols., Inc.*, No. 10-20715-CIV, 2010 WL 3056600, at *2 (S.D. Fla. Aug. 4, 2010), and her decision to transfer will not be overturned absent an abuse of discretion. *Richardson v. Alabama State Bd. of Educ.*, 935 F.2d 1240, 1248 (11th Cir. 1991).

## III.   28 U.S.C. § 1404(a)

28 U.S.C. § 1404(a) provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a) (2011) (as amended by 112th Cong., Pub. L. No. 112-63, on Dec. 7, 2011).[2]

Courts engage in a two-step analysis under section 1404(a) to determine the propriety of a transfer to another district court.

> First, courts determine whether the action "might have been brought" in the proposed transferee court. This requires that the case could have been brought in the transferee district at the time the action was filed. *Hoffman v. Blaski*, 363 U.S. 335, 341, 80 S. Ct. 1084, 4 L.Ed. 2d 1254 (1960). Second, courts assess whether convenience and the interest of

---

[2] On December 7, 2011, the 112th Congress passed Pub. L. No. 112-63, which, among other things, added the phrase "or to any district or division to which all parties have consented" to the end of 28 U.S.C. § 1404(a).

3

> justice require transfer to the requested forum. *See Jewelmasters, Inc. v. May Dep't Stores*, 840 F. Supp. 893, 894–95 (S.D. Fla.1993) (citing *Cont'l Grain Co. v. The Barge FBL–585*, 364 U.S. 19, 80 S. Ct. 1470, 4 L.Ed. 2d 1540 (1960)). Section 1404 factors include (1) the convenience of the witnesses; (2) the location of relevant documents and the relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) a forum's familiarity with the governing law; (8) the weight accorded a plaintiff's choice of forum; and (9) trial efficiency and the interests of justice, based on the totality of the circumstances. *Manuel v. Convergys Corp.*, 430 F.3d 1132, 1135 n. 1 (11th Cir. 2005).

*S.E.C. v. BIH Corp.*, No. 2:10-cv-544-FtM-29DNF, 2011 WL 3862530, at *2 (M.D. Fla. Aug. 31, 2011). "An action 'might have been brought' in a proposed transferee court if: (1) the court had jurisdiction over the subject matter of the action; (2) venue is proper there; and (3) the defendant is amenable to process issuing out of the transferee court." *Id.*

The party requesting the transfer bears the burden of establishing that the transfer is warranted. *In re Ricoh Corp.*, 870 F.2d 570, 573 (11th Cir. 1989).

## IV. ANALYSIS

Pursuant to the above two-step analysis, the Court first evaluates whether this case could have been brought in the S.D.N.Y. Finding that it could, the Court next proceeds to weigh the section 1404(a) factors—namely, convenience of parties and witnesses and the interest of justice—to decide whether it should exercise its

4

discretion to effectuate a transfer.

### A.     Plaintiff's Case Could Have Been Brought In The S.D.N.Y.

Plaintiff argues that because he is an individual Plaintiff with no minimum contacts in New York, and because he does not seek to bring his suit on behalf of any Plan participants in New York, he could not have filed his lawsuit in the S.D.N.Y. However, as Defendants correctly observes, minimum contacts in a forum analysis are measured based on the *Defendants'* contacts, not the Plaintiff's. Here, the Defendants—representing a multi-employer Pension Plan that is national in scope— argue that they "unquestionably" have sufficient minimum contacts with the New York venue to establish proper venue in the S.D.N.Y. (citing 29 U.S.C. § 1132(e)(2)). The Court agrees.

Within the Eleventh Circuit, "[t]o constitute constitutionally minimum contacts, the <u>defendant's</u> <u>contacts</u> with the applicable forum must satisfy three criteria." *Vermeulen v. Renault*, U.S.A., Inc., 985 F.2d 1534, 1546 (11th Cir. 1993) (emphasis added). As explained by the *Vermeulen* court:

> First, the contacts must be related to the plaintiff's cause of action or have given rise to it. Second, the contacts must involve some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum . . . , thus invoking the benefits and protections of its laws. Third, the defendant's contacts with the forum must be such that [the defendant] should reasonably anticipate being haled into court there.

985 F.2d at 1546 (internal quotations and citations omitted).

Under 29 U.S.C. § 1132(e)(2), an ERISA action may be brought in any district "where a defendant resides or may be found."[3]  The Defendants posit:

> A pension fund "may be found" where pension plan participants work and earn their pension credits. *Varsic v. U.S. Dist. Court for Cent. Dist. of Cal.*, 607 F.2d 245, 247 (9th Cir. 1979); *Seitz v. Bd. of Trustees of the Pension Plan of the N.Y. State Teamsters Conference Pension & Ret. Fund*, 953 F. Supp. 100, 103 (S.D.N.Y. 1997).  This is so because, under ERISA's broad venue provision, Congress intended ERISA defendants to be "found" where the defendant has enough "minimum contacts" to support the exercise of personal jurisdiction under *International Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945).  *Varsic*, 607 F.2d at 248-49; *IAM Nat'l Pension Fund, Benefit Plan A v. Wakefield Indus., Inc., Div. of Capehart Corp.*, 699 F.2d 1254, 1257 (D.C. Cir. 1983); *Waeltz v. Delta Pilots Ret. Plan*, 301 F.3d 804, 810 (7th Cir. 2002); *Moore v. Rohm & Haas Co.*, 446 F.3d 643, 646-47 (6th Cir. 2006); *Seitz*, 953 F. Supp. at 102-03.

(Doc. 14 at 13).  The Defendants further set out the facts supporting their minimum contacts with New York:

> In the instant case, numerous Pension Plan participants work and earn their pension credits in the Southern District of New York.  *See* Beck Decl. ¶ 5.  The Pension Fund receives contributions from 16 employers in that district for the purpose of providing pension benefits to their eligible employees.  *Id.*  The Pension Fund issues pension benefit checks or direct bank deposits to qualified Plan Participants in the district.  *Id.*  On these facts, this action unquestionably could have been brought in

---

[3] "Where an action under this subchapter is brought in a district court of the United States, it may be brought in the district where the plan is administered, where the breach took place, or where a defendant resides or may be found, and process may be served in any other district where a defendant resides or may be found."  29 U.S.C. § 1132(e)(2).

6

New York. *See Varsic*, 607 F.2d at 250.

(Doc. 14 at 14).

Plaintiff argues that because this case relates solely to Mr. Moore, who resides and works in Alabama, where the Sara Lee plant is located, he could not have brought this lawsuit against his Pension Plan in New York. (Doc. 16 at 17-18). Plaintiff admits that the pension plan is "found" "where pension plan participants work and earn their pension credits." (Doc. 16 at 18). However, Plaintiff overlooks the fact that this is a multi-employer pension plan that is *national* in scope, so its participants work and earn their credits all across the country, including New York, as evidenced by the lawsuits already filed there as well as the affidavit of John Beck.[4]

Moreover, in addition to Defendants' minimum contacts in New York, as a practical matter, these Defendants *have* already been haled into court in New York, so venue in the S.D.N.Y., where two other like cases are already pending (and consolidated), is proper. For all these reasons, the Court finds that this Plaintiff could have brought his case in the S.D.N.Y. As such, the first step of the section 1404(a) analysis is met, and the Court proceeds to consideration of the other factors.

---

[4] According to the affidavit of John Beck, the pension fund manager, "216 employers throughout the United States make contributions to the Pension Plan for the purpose of providing pension benefits to their eligible employees," and of those employers, 49 are located in New York. (Doc. 14-1 at 2). Thus, according to the fund's records, "2,179 pension plan participants work and earn their pension credits in the state of New York." (*Id.*).

### B.     Section 1404(a) Factors Favor Transfer

In support of its Motion To Transfer, Defendants point to the first-filed rule, the recent transfer of three similar cases to the S.D.N.Y., and section 1404(a) "interest of justice" factors such as judicial economy and the need for consistent judgments when interpreting a nationwide ERISA plan. The Court considers each in turn.

#### 1.     *Application of the First-Filed Rule*

Defendants argue that application of the first-filed rule to this case supports transfer under section 1404(a). The "well-established" first-filed rule provides that "[w]here two actions involving overlapping issues and parties are pending in two federal courts, there is a strong presumption across the federal circuits that favors the forum of the first-filed suit under the first-filed rule." *Manuel v. Convergys Corp.*, 430 F.3d 1132, 1135 (11th Cir. 2005). Moreover, the Eleventh Circuit "require[s] that the party objecting to jurisdiction in the first-filed forum carry the burden of proving 'compelling circumstances' to warrant an exception to the first-filed rule." *Id.* (citation omitted).

Additionally, Chief Judge William H. Steele has noted that application of the first-filed rule to section 1404(a) transfers may result in a shifting of the burden:

> For purposes of Section 1404(a), "when two courts have concurrent jurisdiction over a dispute involving the same parties and issues, as a general proposition the forum in which the first-filed action is lodged

> has priority." 15 Wright & Miller, § 3854 at 272-74.  This principle overrides the usual rule that the party proposing transfer bears the burden of showing that transfer should be ordered. *Id*.

*Crimson Yachts, et al. v. M/Y Betty Lyn II, et al.*, Civil Action No. 08-334-WS-C, 2011 WL 176052, at *2 (S.D. Ala. Jan. 19, 2011) (footnotes omitted).

The first-filed action to raise similar ERISA claims against the Pension Fund was styled *Schol, et al. v. Bakery & Confectionery Union & Industry International Pension Fund, et al.*, No. 11-cv-0537 (E.D.N.Y.) (filed Feb. 3, 2011).  The second-filed case was styled *Alcantara, et al. v. Bakery & Confectionery Union & Industry International Pension Fund, et al.*, No. 11-cv-1471 (S.D.N.Y.) (filed Mar. 3, 2011).  Both cases were filed as putative class action lawsuits.  Those two cases have since been consolidated in the S.D.N.Y. as *In re Bakery and Confectionery Union and Industry International Pension Fund Pension Plan,* Case No. 11-cv-1471 (VB) (S.D.N.Y.) (hereinafter the "Consolidated Action").  The Consolidated Action is currently pending before District Judge Vincent L. Briccetti.

The parties filed a Consolidated Amended Complaint (the "CAC") in the S.D.N.Y. case on August 24, 2011 (see Doc. 14, Ex. 3).  The CAC asserts a nationwide class action against the pension fund, the Board of Trustees, and its individual trustees, claiming that the July 1, 2010 plan amendment violates ERISA's anti-cutback provision and that the Trustees breached their duties in adopting the

amendment.[5] The Class Definition as drafted in the CAC provides:

> All participants in the Bakery and Confectionery Union and Industry International Pension Fund or, if deceased, their beneficiaries or Estates, who accrued (a) years of Covered Employment credits and (b) age credits towards eligibility for pension benefits under Plan C (also known as the "Golden 90") or Plan G (also known as the "Golden 80"), but who are rendered ineligible for pension benefits under Plan C or G by reason of Amendment Number Two to the Rules and Regulations of the Bakery and Confectionery Union and Industry International Pension Fund, as amended and restated January 1, 2010.

(Doc. 14, Ex. 3 at 10). At the hearing in this case, no party argued that Plaintiff would not be covered by the class definition, although Plaintiff argues that he seeks additional or different remedies, which Defendants appropriately concede could be handled by the S.D.N.Y. district judge through sub-classes or, alternatively, allowing Moore's claim to proceed in that court as a separate action.

Although Plaintiff does not challenge his eligibility for the putative class, Plaintiff challenges application of the first-filed rule in this case, first claiming that it does not apply, and then asserting a "compelling circumstances" exception. Plaintiff's grounds for asserting that the rule does not apply rests on the dissimilarities it identifies between the cases, which include several claims asserted by the Plaintiff that are not (yet) present in the New York action. (Doc. 16 at 10). However, Plaintiff

---

[5] Currently pending before Judge Briccetti is the plaintiffs' Motion for Class Certification, which is unopposed.

makes a key admission: "Admittedly, both the Plaintiff's Complaint and the New York action question the validity of the plan amendment by defendants." (*Id.*). In light of that major overlapping issue, which could easily be characterized as a "core" issue, and the overlapping defendants (namely, the pension fund and Board of Trustees), the Court agrees with the Defendants that there is sufficient overlap for the first-filed rule to apply.

As to the "compelling circumstances" exception, Plaintiff argues that it would be fundamentally "unfair" for the Court to apply the rule in this case because of the Eleventh Circuit's unique exhaustion of remedies requirement in ERISA cases. Thus, Plaintiff's sur-reply presents two suggestions:

> One way to address this unique problem is to find that due to the New York action pleading that its plaintiffs do not have to exhaust administrative remedies, this could not apply to an 11th Circuit plaintiff. Another remedy would be to find that a compelling circumstance exists justifying a departure from the "first filed" rule. Defendants' arguments that the "first filed" rule is merely a matter of comity overlooks this critical and fundamental unfairness.

(Doc. 32 at 8).

The Court is not persuaded by the Plaintiff's argument that the "unfairness" of the Eleventh Circuit's exhaustion requirement constitutes a "compelling circumstance" to avoid application of the first-filed rule. The Court agrees with the Defendants' characterization of the exhaustion argument as a "red herring." (Doc.

19 at 3-4). First, the issue more properly goes toward the practical issue of whether this case should be *consolidated* with the earlier-filed cases, rather than the issue before the Court, which is only whether the equities favor *transfer*. Second, the Defendants have represented to the Court (and apparently also to Plaintiff) that *they will not assert exhaustion of remedies* in the Consolidated Action. The Defendants' position on this issue is reasonable in light of the futility exception to the exhaustion requirement. The chance that exhaustion will pose a problem for Plaintiff if the case is transferred to New York, therefore, is slim to none.

Moreover, the Court need not even reach application of the first-filed rule in order to decide the section 1404(a) transfer issue. The Court has broad discretion under 1404(a) to effect a transfer where the Court finds it to be in the interest of justice, so while application of the first-filed rule is a helpful factor to consider, it is not dispositive. *See Crimson Yachts*, 2011 WL 176052 at *3 ("The existence of an earlier-filed action in another district is not conclusive and may still be outweighed by other Section 1404(a) considerations." (citing 15 Wright & Miller, § 3854 at 275)).

### 2. *Three Similar Cases Have Been Transferred*

Defendants' Motion To Transfer, and related supplemental filings, inform the Court that three similar cases have recently been transferred from district courts to the S.D.N.Y. pursuant to section 1404(a). See *Martinez, et al. v. The Bakery and*

*Confectionery Union & Industry International Pension Fund, et al.*, Case No. 8:11-cv-1611-JVS-MLG (C.D. Cal.) (filed Oct. 19, 2011); *Blackwell, et al., v. Bakery & Confectionery Union & Industry International Pension Fund, et al.*, No. 4:11-cv-2656-KOB (N.D. Ala.) (filed July 25, 2011); *Scott, et al., v. Bakery & Confectionery Union & Industry International Pension Fund, et al.*, No. 1:11-cv-3146-KOB (N.D. Ala.) (filed Aug. 30, 2011).  The three transferred cases undisputedly present the same core issue as presented in *Moore*, which centers on whether the July 1, 2010, amendment to the Pension Fund's plan document violates ERISA.[6]

In *Martinez*, there was no dispute that the first requirement of section 1404(a) was met, as the court noted that the action could have been brought in the S.D.N.Y. (Doc. 21, Ex. 2 at 6). Therefore, the court only needed to evaluate whether the "interest of justice" factors militated in favor of transfer.

The court also engaged in discussion and application of the "first-to-file" rule, as the *Martinez* plaintiffs argued that the rule should not apply because their case was not "substantially similar" to the cases filed in N.Y.  The court determined, however, that "the particular facts pled in each suit do not create significant differences in the legal issues." (Doc. 21, Ex. 2 at 8).  The court found that the Defendants correctly

---

[6] The amendment affected the eligibility of plan participants to receive their full pension benefits. Specifically, the amendment modified Plan G, the "Golden 80" plan, affecting more than 50,000 plan participants across the nation.  (See Doc. 14 at 6).

argued for application of the first-to-file rule in this case, and that the plaintiffs' choice of forum (N.Y.) in the first-filed case dictated the venue. (Doc. 21, Ex. 2 at 10). The court disagreed with the plaintiffs' contentions that Defendants' request for transfer was suspicious and constituted a bad faith litigation tactic.

The court ultimately found that because *Martinez* presented legal issues that were substantially similar to those that had already been filed and consolidated in the S.D.N.Y., it was in the interest of justice to have one court adjudicate both cases to eliminate waste and the risk of differing outcomes. The court summarized its findings as follows:

> Though Plaintiffs offer some reasons why the convenience factors tip in their favor, the convenience of maintaining this action in the Central District [of California] does not overcome the "interest of justice" factors that militate in favor of transfer. Specifically, the risk of differing outcomes and the waste of judicial resources involved in litigating the same claims against the same defendants in two different courts strongly supports the motion to transfer. Having one court decide the common underlying legal issues in these cases promotes efficiency and obviates the risk of inconsistent outcomes.

(Doc. 21, Ex. 2 at 10-11).

*Martinez* was ordered transferred on December 20, 2011. The case has been transferred to S.D.N.Y. and assigned to Judge Briccetti.

The *Blackwell* and *Scott* cases were both assigned to the Honorable Karon O. Bowdre in the Northern District of Alabama. *Blackwell* involves more than seventy

(70) individual plaintiffs, who sued the Pension Fund, John Beck (the fund manager), and the Board of Trustees. *Scott* is a putative class action with two named plaintiffs, who sued the Pension Fund as well as the individual Board of Trustees members in their official capacities.

On December 21, 2011, Judge Bowdre held a hearing on the pending Motions To Transfer by defendants in the related *Blackwell* and *Scott* cases. The written Orders entered on December 22, 2011 held that transfer was granted pursuant to 28 U.S.C. § 1404(a) for the reasons stated on the record, which included:

1. the risk of inconsistent rulings on the core legal issue of the validity of the amendments affecting a nationwide pension fund;

2. the desire to avoid waste of judicial resources;

3. the operation of the "first-to-file" rule because the first-filed case is now part of a consolidated class action that rests in the Southern District of New York and that consolidated case involves substantially similar parties and substantially overlapping issues; and

4. the interest of justice mandates transfer to the jurisdiction where other cases addressing the core issues are also pending.

(See Notice of Recent Developments, Doc. 23 at Exs. 1 and 2).

The Court agrees with the reasoning of the *Martinez*, *Blackwell*, and *Scott* decisions and finds them persuasive based on their many similarities.

### 3.     *Other Section 1404(a) Factors Favor Transfer*

Various courts have attempted to flesh out the factors a district court should consider when presented with a motion to transfer under section 1404(a). Judge Steele's recent *Crimson Yachts* opinion provides a helpful in-depth analysis concerning his decision to transfer a case under section 1404(a) to the Southern District of Texas. Judge Steele held a hearing to give the parties an opportunity to present their views, and he based his decision to transfer largely on the first-filed rule and the desire to prevent duplicative actions. Even though there were differences between the case before him and the case in Texas, Judge Steele reasoned:

> <u>These distinctions are not significant in light of the substantial overlap between the two lawsuits</u>. <u>Crimson has articulated, and the Court can discern, no reason that both of these actions should proceed separately to trial</u>. *Cf. Continental Grain Co. v. FBL-585*, 364 U.S. 19, 26 (1960) ("To permit a situation in which two cases involving precisely the same issues are simultaneously pending in different District Courts leads to the wastefulness of time, energy and money that § 1404(a) was designed to prevent."); *In re: International Marine Towing, Inc.*, 617 F.2d 362, 364-65 (5th Cir. 1980) (Section 1404(a) is designed to "further the public interest ... by avoiding duplicate proceedings").

*Crimson Yachts*, 2011 WL 176052, at *2 (emphasis added).

Likewise, the Court can discern no reason that *Moore* should proceed differently from the four other actions (the Consolidated Action, *Martinez*, *Blackwell*, and *Scott*) that are already pending in the S.D.N.Y. Although the Court recognizes

16

that this case presents certain differences from the S.D.N.Y. cases, the Court finds that they are differences without distinction.

Because of the unique nature of ERISA plans, and the interest of uniform interpretations of federal law, the Court agrees with Defendants that the balance of section 1404(a) factors weighs in favor of transfer. Moore's complaint challenges the very same amendment that is already the subject of a putative class action lawsuit in the S.D.N.Y. As Defendants observe, "[a]bsent transfer, this Court would have to consider the same facts, receive the same evidence, and adjudicate the same legal claims for a single [plan] participant who is already a member of the putative class that is litigating the claims in a separate federal court." (Doc. 14 at 15). And as the Supreme Court has noted, "where there are hundreds of potential plaintiffs . . . all of whom could with equal show of right go into their many home courts, the claim of any one plaintiff that a forum is appropriate merely because it is his home forum is considerably weakened." *Koster v. Lumbermens Mutual Casualty Co.*, 330 U.S. 518, 524 (1947).

As Defendants also point out, the convenience factors of section 1404(a) also weigh in favor of transfer, as the Defendants' headquarters is located in Maryland, which is closer to New York than Birmingham. The principal documents and witnesses relevant to the case are closer to New York than Alabama. (Doc. 14 at 20).

The Plaintiff's main concern in transferring seems to be the delay he predicts in adjudication. (See Doc. 16 at 8, 14). He points out that resolving this case in New York will likely take three times longer than if the case stayed in the Northern District of Alabama. However, his concern over the "crowded New York dockets" is not relevant to the section 1404(a) factors, nor is it a persuasive reason to defeat transfer.

In his sur-reply, the Plaintiff also argues, for the first time, that his claims are different from the New York cases because he has a different collective bargaining agreement ("CBA"). His argument is unavailing. Nothing in Plaintiff's sur-reply indicates that the eligibility terms for the plan itself are governed by the CBA rather than the national plan documents, and the Defendants' response to the sur-reply confirms that, in fact, "the Pension Plan is governed by *one* set of plan documents that apply uniformly to participants and employers nationwide." (Doc. 281 at 2; *see also* doc. 28-2, Second Decl. of John Beck).

In sum, the Court finds that transfer of this case to the S.D.N.Y. is both procedurally proper and in the interest of justice. The transfer will facilitate judicial efficiency, economy, and consistent verdicts, because it will allow one court to determine the same core claim against the same defendants in a putative class-action lawsuit that affects interpretation of a nationwide ERISA plan. Moreover, granting the transfer request is consistent with three recent transfers in similar cases.

## V. CONCLUSION

For these reasons, using its wide discretion, the Court will **GRANT** the Defendants' Motion To Transfer Pursuant to 28 U.S.C. § 1404(a) by separate Order.

**DONE** and **ORDERED** this the 13th day of January, 2012.

*/s/ Virginia Emerson Hopkins*
**VIRGINIA EMERSON HOPKINS**
United States District Judge